In re SAVILLE.

(District Court, E. D. New York.   March 28, 1898.)

1. SHIPPING—NEGLIGENCE—STARTING STEAMER.
   Where a steam lighter lying in the Atlantic basin in the city of Brooklyn, with its stem two to six feet from the South Central pier, in going slightly forward caught a boy, who was playing on some spiles projecting from under the pier, and crushed him, the owner is not liable, as he was not bound to examine the water between the vessel and the pier before starting.

2. SAME—INSPECTORS' RULES—WHISTLE.
   Inspectors' rules 5 and 8, and the instructions following rule 8, requiring steamers navigating in crowded channels or in the vicinity of wharves to sound their whistles, have reference to the meeting and movement of vessels, and not to a vessel lying close to a pier, and a little boy playing on some logs in the water between the vessel and the pier, and hidden from view.

This was a petition by Leah M. Saville, owner of the steam lighter Ellen, for limitation of liability.

James J. Macklin, for petitioner.
Chas. J. Patterson, for respondent.

THOMAS, District Judge.   The steam lighter Ellen, on the 16th day of September, 1893, was lying alongside the wharf opposite the Clinton stores in the Atlantic basin in the city of Brooklyn.   The bow was at right angles to the South Central pier, the stem being from 2 to 6 feet from the easterly face thereof.   She was fastened by a stern rope, a bow rope, and a spring line.   She was unloaded, so that her deck was some 10 feet from the water, and about 5 or 6 feet above the string piece of the dock, which approximated the same distance above the water.   What is described as a raft, consisting of some old spiles, about 25 feet long, and collectively about 5 feet wide, lay under the South Central pier, but could, and on the day of the accident did, protrude between two upright spiles, about 3 feet beyond the edge of the same.   Between it and the stem of the lighter were some 3 feet of clear water.   Upon this, for a short time previous to the accident, two boys had been playing, and at the moment of the accident one of the boys, Peter Mac-Callister, 9 years and 5 months old, was either playing or washing his foot in the water.   The floor of the pilot house is some 7 feet above the deck, and the pilot house itself is about 50 feet from the highest point of the bow, and in front of the pilot house was a mast and boom.   The lighter is some 100 feet long and 17 feet wide.   A person in the pilot house could not have seen the boy in the position in which he was placed.   On the day of the accident, and about the middle of the day, the captain of the lighter wished to throw the stern out from the wharf for the purpose of getting sternway.   For this purpose he directed a deckhand to cast off the stern rope, which was done.   Meanwhile the captain had given one bell, the signal to go ahead, whereupon the deckhand somewhat loosened the bow rope.   The lighter then moved

slowly forward, pushed the raft backwards or downwards, and caught the boy between the stem of the lighter and one of the spiles of the pier, causing his death. No person connected with the lighter could have seen the boy without standing near and looking over the bow, and no one connected with the lighter did in fact put himself in a position from which the boy could be seen. The respondent claims: (1) That other persons on the wharf or pier saw the boy, and that shortly before starting the lighter the captain was walking on the wharf towards his boat, and could have seen the boy had he looked, as it is alleged that the boy was in plain sight, and was in fact seen by others on the wharf or pier. (2) That no lookout was kept at such a place on the bow as would have enabled the boy to be seen, and that such lookout should have been so placed. (3) That, if the captain could not have seen the boy from the pilot house, he should have placed a lookout in a position advantageous for seeing him. (4) That no whistle was sounded upon starting the lighter, as required by the rules of the board of supervising inspectors, under the heading of "The Pilot Rules for Atlantic and Pacific Coast Inland Waters," reference being had especially to rules 5 and 8. (5) That the Atlantic basin comprises public waters, and is permitted for the use of small boats; and that the boy presumptively was rightfully upon the raft, at least as regards the lighter. (6) That the boy had a right to assume that the barge would not move ahead without giving notice or warning of some kind. (7) That, if the boy was negligent in going upon the raft, still that he was, and for some time had been, in plain sight, and that those in charge of the lighter were bound to use due care for his protection. The above propositions cover both the question of the petitioner's negligence and the contributory negligence of the boy. The question of the petitioner's negligence, when considered, disposes of the claim. The respondent's position regarding the petitioner's negligence results in three propositions: (1) That the captain, while on the wharf, should have seen, and hence must be presumed to have seen, the boy. (2) That the captain should have placed a lookout on the boat, where he could have seen the boy. (3) That the regulation signals should have been given, to warn any person who might be within the few feet between the stem of the lighter and the pier.

The first proposition assumes (a) that the captain, when walking to the lighter on the wharf, did see the boy, or (b) that he should have seen him. There is not the slightest evidence that the captain did see the boy. If he had seen him, the principle would be properly invoked that the captain should have used care, whether the boy was or was not wrongfully or negligently on the raft. But the necessary condition for the application of this doctrine is absent, viz. knowledge by the captain of the boy's presence on the raft. Nor does the fact that two persons are produced who were in situations where they could see the boy, indicate that the captain also saw him. A person is presumed to see what it is his duty to see, if that may be accomplished in the course

of performing the required duty. It cannot be said that the captain, while off the lighter, was under any legal duty to use any care to discover whether any person was in the position occupied by the boy. The contention that a person in charge of a boat, while approaching it, is obliged to examine the water beneath the bow of his boat, to discover whether some person is there present, has no justification, either in legal principle or authority.

As to the second proposition, it seems obvious that it was not the duty of the captain to place or send a lookout to the very bow of the boat to look over and down to the water to discover whether a person was concealed within the five or six feet of the interval between the stem of the boat and the pier. Such an event is so improbable that the demands of prudent navigation do not comprehend it. A lookout is required under certain conditions, and it might be that observation from the pilot house would not be sufficient if from that position the detection of objects could not be effected. But such a rule would not require a lookout to be placed in such a position that he could look over and down from the bow of the boat, and see a boy sitting on some spiles protruding some three feet from beneath a pier, to which the boat was in the proximity disclosed in the present instance. That is not an element of danger of navigation, which a navigator is required to anticipate, or against which he is called upon to guard, unless, perchance, the fact be actually called to his attention, or other facts known to him actually or constructively require such caution in his procedure. The same is true in respect to signals. In this regard the respondent's proposition is this: A ship, with her side against a wharf, and her stem within five or six feet of a pier, desires to go slightly forward, to throw out her stern and get sternway. A small boy is on some spiles projecting from, and some five feet below, the pier, which itself is about the same distance below the deck of the boat. The respondent's contention is that rule 5, and the instructions following rule 8 (but applicable to rules 1 to 8), so apply that a failure to observe them raises a legal presumption of negligence; that is, the pilot should have given one long blast of the steam whistle. Rule 5 requires a steamer nearing a short bend or curve in the channel, when the view is obstructed for half a mile, to give one long blast, which must be answered by any steamer, within hearing, going in an opposite direction. This rule is also made applicable when boats are moved from their docks or berths, and other boats "are liable to pass from any direction towards them." A boy playing on some spiles under a steamer's bow, and tucked in between the bow and a pier, is not within the purpose or protection of this rule. The note following rule 8 provides for an exception to rules 1 to 8 "when steamers are navigating in a crowded channel, or in the vicinity of wharves. Under such circumstances, steamers must be run and managed with great caution, sounding the whistle, as may be necessary, to guard against collision or other accidents." The exception was to deprive a steamer running under such circumstances of immunity

from a mere observance of rules that could not be deemed suffi-cient to meet the exigencies of navigation in "a crowded channel, or in the vicinity of wharves," and to impose a caution that the nature of the situation would require of a prudent man to avoid accidents. The very purpose of the exception is to make the duty of observing care depend upon no mere technical signals, but to impose a general obligation of care in the movement of the steamer in localities where other craft were, or might be expected to be. Its general intention would not cover the present case, as nothing in the way of shipping could be expected to be crowded between the bow of the lighter and the pier; and, indeed, such a thing, if not impossible, is too improbable, and foreign to any state of facts contemplated by the rule, to permit a serious contention that its direction has any application. These rules have reference to the meeting and movement of ships, vessels, and steamers, and not to a vessel lying with her bow close to a pier, and a little boy, who has climbed down the spiles, and placed himself on some logs right under the vessel's bow, hidden from the view of any person other than one looking over and down from the extreme forward part of the boat. Whatever sympathy such an accident as that here in-volved may provoke, there does not seem to be a single legal jus-tification for allowing the claim. Therefore the claim is disal-lowed, and the relief prayed for by the petitioner is granted. The decree may be settled in accordance with this decision.